No: 13-17001

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FEB 14 2014

FILED_____
DOCKETED_____
                    DATE        INITIAL

NIKOLAY OTCHKOV
Plaintiff/Appellant

vs.

ALAN EVERETT, in his official and individual capacities as Director of the
Arizona Department of Liquor Licenses and Control; Detective OSCAR
CORTEZ in his official and individual capacities as an officer in the Phoenix
Police Department; CITY OF PHOENIX; Attorney JESS LORONA, and Law
Firm" LORONA, DUCAR & STAINER LTD.

Defendants/Appellees.

On Appeal from United States District Court
for the District of Arizona

D.C. No: 2:12-cv-2042-PHX-JAT

Presiding Judge:
The Honorable James A. Tailborg

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

NIKOLAY OTCHKOV
In *Propria Persona*
9168 West Albert Lane
Peoria, AZ 85382
(602) 515-6505

No: 13-17001

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FEB 1 4 2014

FILED_____
DOCKETED_____
                        DATE         INITIAL

## NIKOLAY OTCHKOV
Plaintiff/Appellant

vs.

ALAN EVERETT, in his official and individual capacities as Director of the Arizona Department of Liquor Licenses and Control; Detective OSCAR CORTEZ in his official and individual capacities as an officer in the Phoenix Police Department; CITY OF PHOENIX; Attorney JESS LORONA, and Law Firm" LORONA, DUCAR & STAINER LTD.

Defendants/Appellees.

On Appeal from United States District Court
for the District of Arizona

D.C. No: 2:12-cv-2042-PHX-JAT

Presiding Judge:
The Honorable James A. Tailborg

## **PLAINTIFF-APPELLANT'S OPENING BRIEF**

NIKOLAY OTCHKOV
In *Propria Persona*
9168 West Albert Lane
Peoria, AZ 85382
(602) 515-6505

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................ii

JURISDICTION..............................................................................................1

APPEALABILITY...........................................................................................1

ISSUES PRESENTED....................................................................................1

STATEMENT OF THE CASE.........................................................................2

      B.      Factual Background.......................................................................2

      C.      Procedural History.........................................................................9

ARGUMENT................................................................................................10

      A.      The District Court Prejudiced Otchkov in Denying
             His Motion for Entry of Default Against Everett

      B.      The District Court Erred in Granting Everett's
             Motion to Dismiss

      C.      The District Court Abused its Discretion in Denying
             Otchkov's Motions to Strike City Defendants and Jess
             Lorona's Motion to Dismiss for Disobeying Court's Order

      D.      The District Court Erred in Granting the City Defendants'
             Motion to Dismiss on Ground Statute of Limitations

      E.      The District Court Erred in Granting Lorona's
             Motion to Dismiss

CONCLUSION.............................................................................................39

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

<u>State</u>

*Ford v. Revlon, Inc.,*153 Ariz. 38, 43, 734 (1987)............................................................28

<u>Federal</u>

*Alan Neuman Productions, Inc. v. Albright,*
  862 F.2d 1388, 1392 (9th Cir. 1988)...........................................................12

*Balser v. Department of Justice*, 327 F.3d 903, 911 (9th Cir. 2003)................................19

*Bell Atlantic Corp. v. Twombly,*  550 U.S. 544 (2007).......................................................38

*Board of Regents v. Roth,*  408 U.S. 564, 69 (1972)........................................................16

*Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)......................................18

*City of Canton v. Harris*, 489 U.S. 378, (1989)................................................................35

*Carey v. Piphus,* 435 U.S. 247 (1978).....................................................................16, 29

*Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 739 (9th Cir. 1987).........................19

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir.1998).........................22

*Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir.1985).......................16, 23

*Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993)..............................30

*Conley v. Gibson,* 355 U.S. 41, 47 (1957)..............................................................15, 39

*Demery v. Kupperman,* 735 F.2d 1139, 1147 (9th Cir.1984)...........................................26

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)................................................................36

*Donoghue v. Orange County*, 848 F.2d 926, 929 (9th Cir.1987)....................................30

*Duckworth v. Franzen,* 780 F.2d 645, 651 (7th Cir.1985)..............................................25

*Empress LLC v. City of San Francisco,*
  419 F.3d 1052, 1055 (9th Cir. 2005).........................................................35

*Edelman v. Jordan,* 415 U.S. 651 (1974).................................................23, 24

*Estelle v. Gamble*, 429 U.S. 97, 106, (1976).........................................15

*Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984)..................................11

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)...........................................24

*Foster v. MCI Telecommunications Corp.,*
   F.2d 1116, 1120 (10th Cir.1985)..............................................29

*Franchise Holding II v. Huntington Rests. Group, Inc.,*
   375 F.3d 922, 925 (9th Cir.2004)............................................13

*Galbraith v. County of Santa Clara,*
   307 F.3d 1119, 1124 (9th Cir. 2002).......................................35

*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986).......32

*Garaux v. Pulley*, 739 F.2d 437, 439-40 (9th Cir.1984)..................38

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)............................20

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983)..........34, 35

*Hamdi v. Rumsfeld,* 542 U.S. 507 (2004)......................................16

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)............................25

*Hafer v. Melo*, 502 U.S. 21 (1991).................................................25

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.,*
   377 F.2d 776 (3d Cir.1967)....................................................33

*Haddle v. Garrison*, 119 U S 489 (1998)........................................20

*Haines v. Kerner*, 404 U.S. 519 (1972)..........................................37

*Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 642 (9th Cir.1999).........15

*Hackin v. Lockwood*, 361 F.2d 499 (9th Cir. 1966).........................23

*Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001).....................31

*Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996)..............................................37

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163, 167-68 (1993)......................................................35

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012)..............................19

*Lee v. City of Los Angeles*, 250 F.3d 668, 679-80 (9th Cir. 2001)..................35

*Lugar v. Edmondson Oil Co.*, 457 US 922 (1982)...............................14, 37

*Martinez v. California*, 444 U.S. 277 (1980)........................................23

*Milstein v. Cooley,* 257 F.3d 1004, 1007 (9th Cir.2001)..............................15

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978).........34

*Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*,
    632 F.3d 1056, 1060 (9th Cir. 2011).............................................27

*Memphis Community Sch. Dist. v. Stachura*, U.S. 299, 308-09 (1986)...........29

*Mesle v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
    615 F.3d 1085, 1092 (9th Cir. 2010)..........................................13, 14

*Nalle v. Oyster*, 230 U.S. 165, 182,(1913).........................................19

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)...................31

*Norco Construction, Inc. v. King County*,
    801 F.2d 1143 (9th Cir. 1986)....................................................22

*Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916 (9th Cir. 2004)...............37

*Owen v. City of Independence*, 445 U.S. 622 (1980).................................36

*Old Colony Trust Co. v. City of Seattle*, 271 U.S. 426 (1926)......................22

*Parratt v. Taylor*, 451 U.S. 527 (1981)..............................................16

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).....................................27

*Poster Exchange, Inc. v. National Screen Service Corp.*,
    517 F.2d 117, 127 (5th Cir. 1975)...............................................33

iv

*Quern v. Jordan*, 440 U.S. 332, 337 (1979)...................................................................23

*Rk Ventures, Inc. v. City of Seattle*,
  307 F.3d 1045, 1051 (9th Cir. 2002)............................................................31

*Rutledge v. Arizona Bd. of Regents*,
  660 F.2d 1345, 1350 (9th Cir.1981).............................................................26

*Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991)..........................26

*Sellars v. Procunier,* 641 F.2d 1295 (9th Cir. 1981)........................................26

*Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986)................36

*Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1988)..........................................32

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39 (1957)...............16

*Scheuer v. Rhodes*, 416 U.S. 232 (1974).........................................................23

*Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 508 (2002)..............................25

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39 (1957).........16, 23

*Sinaloa Lake Owners Association v. City of Simi Valley*,
  864 F.2d 1475, 1483 (9th Cir. 1989)............................................................16

*TCI Group Life Ins. Plan v. Knoebber*,
  244 F.3d 691, 697 (9th Cir. 2001)............................................................12, 14

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).....................................28

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  865 F.2d 1539, 1540-41 (9th Cir. 1989).......................................................36

*United States v. Classic*, 313 U.S. 299, 326 (1941)........................................14

*Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir. 1979).......................................31

*West v. Atkins*, 487 U.S. 42, 49 (1988)...........................................................14

*Wilson v. Garcia*, 471 U.S. 261 (1985)............................................................21

Federal Statutes

28 U.S.C. § 1291....................................................................................................1

28 U.S.C. § 1331..............................................................................................1

28 U.S.C. § 1343(a)..............................................................................1, 24, 25

28 U.S.C. § 1367(a)...........................................................................................1

42 U.S.C. § 1983............................................................1, 14, 15, 21, 27, 29

42 U.S.C. § 1985.....................................................................1, 20, 21, 25

42 U.S.C. § 1986..............................................................................................1

42 U.S.C. § 1988(a)..........................................................................................1

<u>Arizona Revised Statutes</u>

A.R.S. § 12-542.............................................................................................21

<u>Arizona Rule of Civil Procedures</u>

Rule 4.1(i)......................................................................................................12

<u>Federal Rules of Civil Procedures</u>

Rule 4...............................................................................................................11

Rule 8 (a)...................................................................................................25, 39

Rule 12(a)...................................................................................................9, 12

Rule 12(b)(6)..................................................................................................15

Rule 12(f).........................................................................................................30

Rule 16(b).........................................................................................................9

Rule 55 (a).......................................................................................................11

Rule 55 (c).......................................................................................................11

<u>Constitutional Provisions</u>

First Amendment.............................................................................................25

Eleventh Amendment.................................................................................23, 26

Fourteenth Amendment...........................................................................15, 22, 23

Title VII of the Civil Rights Act.............................................................24, 25

## JURISDICTION

The District Court had jurisdiction under 28 U.S.C. Sections 1331, 1343(a), and 1367(a); 42 U.S.C. Sections 1983, 1985, 1986, and 1988(a).

Appellant filed timely his Notice of Appeal on October 3, 2012 (E.R.[1] 05).

This Court of Appeals has jurisdiction under 28 U.S.C. §1291

## APPEALABILITY

Plaintiff-Appellant Nikolay Otchkov (Otchkov) is appealing from a final judgment entered on September 5, 2013. The judgment is based upon the District Court orders dated on October 4, 2012, dismissing the Complaint with prejudice against Allan Everett and City of Phoenix, and with leave to amend against Jess Lorona. (E.R. 19, 20, 21).

## ISSUES PRESENTED

1.  Whether Otchkov received a proper judicial or due process

2.  Whether the District Court abused its discretion in denying Otchkov's Motion for Default Judgment.

3.  Whether District Court Prejudiced Otchkov by Applying Incorrect Legal Standard When It Set Aside the Entry of Default Against Everett

4.  Whether the District Court erred in granting Defendant Alan Everett absolute and qualified immunities.

5.  Whether the District Court denying Otchkov's Motions to Strike in conjunction with granting City Defendants' and Jess Lorona's Motions to Dismiss prejudiced Otchkov.

6.  Whether the District Court erred in granting City Defendants' Motion to Dismiss on statute of limitations ground.

7.  Whether the District Court erred in granting Defendant Jess Lorona's Motion to Dismiss for failure to state a claim.

---

[1] In this Brief, "E.R." refers to Excerpts of Record Volume One 1 through 13, and "E.R." II refers to Excerpts of Record Volume Two 14 through 22.

## STATEMENT OF THE CASE

### A.    Introduction

In the state of Arizona Series Liquor License 6 (License#6) is a privately own, selling or buying of such is a matter between two private parties. In 2005, the State increased license availability through Arizona State Lottery (Lottery). A person interested to obtain License#6 is required to provide criminal history record from Department of Public Safety. Upon a clean of criminal history record the Department of Liquor License and Control (DLLC) allows that person to participated in the Lottery. If a person is randomly selected, he/she is required to pay mandatory "nonrefundable deposit of 50% license's market value. However, if the State Liquor Board (the Board) disqualifies an applicant of owning License#6, the DLLC forfeits the deposit based on its own failure to abide with the terms of the contact. Here, the situation is identical and as a victim Otchkov is challenging that DLLC's unconstitutional policy as moving force of his constitutional violations.

### B.    Factual Background

In April of 2000 Otchkov bought a restaurant and sports bar under the franchise "Famous Sam's" investing more than $650,000. For the next 8 years Otchkov employed full time over twenty employees and operated the establishment under liquor License No: 12074539 which requires minimum of 40% revenue from food sales. On June 14, 2007, City of Phoenix officials including Detective Oscar Cortez (Cortez) on Phoenix Police Department's (PPD) behalf conducted an inspection at "Famous Sam." Cortez found violation of untagged coin operated games for which he gave Otchkov traffic citation. (E.R. 1 ¶¶ 23-24, Exh. C).

2

Due to customers' satisfaction, Otchkov managed to expend the premises with an outdoor entertainment center. In July 2007, Otchkov applied for zoning adjustment and paid $985.00 *application fee*. PPD's approval was required. At the first hearing on September 27, 2007, Cortez opposed the project upon false allegation of complaint by kindergarten staff member. Although, Cortez's opposition, the zoning administrator approved the project on stipulation of four-month period Otchkov to present a security plan with a new day for review on January 24, 2008. Holding grudge against Otchkov, Cortez unreasonably rejected the plan 24 times for petty reasons. In mean time, City of Phoenix approved the project with building permit. Otchkov invested over $100,000. On January 24, 2008, a hearing was held over the security plan in City of Phoenix Hall. On that day before the hearing, Cortez under threats against Otchkov stated: "*You Bulgarians never gonna learn to obey the laws and that is **why you never gonna get a license in this City**." (Id. ¶ 25, Exh's D-E). Solely on Cortez's opposition the hearing was postponed for another six months. Mentally affected by Cortez's games, Otchkov filed a harassment complaint to his superiors. On the following day the plan was approved by his commander. Also, the DLLC approved the plan.

At the end of 2007, Otchkov's contract with "Famous Sam" had expired. Otchkov continued to operate the business under new name "Big Nixx." In January 2008, the Board audited "Big Nixx" and found violation of revenue less than 40% of food sales. The Board sanctioned Otchkov with $4000.00 fine and gave him a six-month period to to acquire License#6. He paid the fine. Otchkov decided to try his luck through the Lottery in order to aquire License#6. Seeking information, Otchkov called in DLLC's officer where a female employee advised him that, he is allowed to represent himself in that matter, or retain an attorney and recommended Mr. Jerry Lewkowitz (Lewkowitz).

3

As advised Otchkov hired Lewkowitz for representation over the matter and paid $8, 000. At first, Lewkowitz offered a license agent services upon annual fee of $1,500 for *protection* of unexpected surprises. Otchkov rejected that obsolete MOB's generous offer of racketeering. On April 1, 2008, before entering the Lottery, Lewkowitz on Otchkov's behalf submitted an application for License#6 upon disclosed location with fingerprints attached required by DLLC for criminal record history and paid $100.00 nonrefundable [application fee] (*Id.*, Exh. A). At the end of April 2008, the DLLC approved Otchkov to participate in the Lottery. On May 4, 2008, Otchkov was selected as a winner of License # 06075007. According to the letter he received on May 14, 2008, the DLLC requires Otchkov to pay 50% nonrefundable deposit of $55, 834 in order to secure the purchase of the license. (*Id.*, Exh. B). On May 29, 2008, Otchkov paid the sum. On May 27, 2008, Lewkowitz on Otchkov's behalf submitted a Liquor License Questionnaire to the City of Phoenix and paid a $1,450.00. application fee. DLLC placed a sign on "Big Nixx" front wall showing the upcoming License#6 for public opinions and required Otchkov to disseminate 120-130 letters with the same regard to all businesses located in five-mile radius with forty-five day period to respond. After the expiration of that period no petition in opposition was filed, except by . . . Cortez. Cortez accused Otchkov of falsifying his application by not disclosing the "arrest" on June 17, 2007, when he cited him with traffic ticket for amusement violation that latter was disregarded by the court. On that base, City Council recommended disapproval of Otchkov's License#6 application (*Id.* Exh. G). In order to resolve the dispute the Board set a hearing for September 10, 2008 to consider the Original Application. Upon Lewkowitz's request new hearing was set for December 4, 2008. On the same day about 10:30 a.m. (two hours before the scheduled hearing) Cortez accompanying by

4

another unidentified female police officer furiously entered "Big Nixx" and ordered the day-shift Bartender Brandy Backes[2] to stop serving and all customers to leave because he is closing the restaurant for the reason expired license. Approximately, an hour after the closing, Otchkov arrived at "Big Nixx" to investigate the incident. In contrast to Cortez's wrong allegation, Otchkov showed him the receipt upon payment of license's fee. Raged, Cortez ignored the receipt and then jumped over Otchkov by screaming: "*If you did not pay the license fee, I have the power to close the restaurant.*" In mean time, a representative from the City of Phoenix, verified that the fee was paid and the license is operative. Confronted with the truth, Cortez again threatened Otchkov by stating: "*Now you can reopen the restaurant, but I'm going to **take away you license in couple of hours from now***."

Following the City Council recommendation On December 4, 2008, the Board denied Otchkov's application for License#6 based on his criminal history as a slam landlord and violations related to other establishments he has. (*Id.*, Exh. H). The Board gave Otchkov 35 days to appeal. Stressed out of the great possibility of loosing the business, on December 8, 2008, Otchkov suffered a heart attack that resulted in permanent disability. On Lewkowitz's advice Otchkov did not appeal the Board's decision because pursuing an appeal would be futile on the fact that City of Council made its recommendation based on reliable source --- Cortez. In order to save "Big Nixx" Lewkowitz recommended a transfer or selling it entierely to Step-Daughter Tanya Stoikova (Stoikova). As advised, Otchkov sold "Big Nixx" to Stoykova on fire-sale with huge loss. She applied for License#12, which the Board denied it predicated on hidden ownership consideration by Cortez.

---

[2] Brandy Backes was reluctant to gave a statement in fear of government retribution.

Concerned of wrongful government's actions, Otchkov contacted with the DLLC's Director Jerry Oliver asking refund of the deposit of $55,854, he paid just for nothing. Jerry Oliver refused to do it, but suggested possibility is very likely with an assistance of lawyer. (*Id.*, ¶¶ 37-38).

On January 19, 2009, Cortez accompanied by Officer Karen Anderson (not named defendant) with no search warrant overstepped the dwelling's line and arrested Zarina Otchkova's (Otchkov's daughter) along with her eight-year old Daughter Meriam. During the arrest, Cortez threaten Otchkova with taking Mariam away, if she does not cooperate with the authority[3]. In mean time, Officer Karen Anderson under arrest questioned Meriam with no parental consent or court order. Dissatisfied with his failure to obtain information, at the end of that shameful event, Cortez proudly bragged about his victory by declaring: " *I'm the reason why your dad did not get license*"

As result of improper and oppressive actions by duly sworn representative of the law, Otchkov incurred an unjustifiable deprivation of property, including loss of privilege, loss of business, income and permanent health issues which clearly became a federal issue. Desperate from the losses, Otchkov disseminated over hundred letters to many law firms describing the events. Attorney Jess Lorona (Lorona) from "Lorona, Stainer & Ducar, Ltd" first responded. Lorona invited Otchkov, Girlfriend Diana Kitchukova and Stoykova in his office to discuss a possible of lawsuit against the DLLC and PPD. After recounting the events, Lorona recognized there is viable claims of constitutional violations, even he concerned a legal malpractice lawsuit against Lewkovitz. Lured by

---

[3] Zarina Otchkova also was reluctant to gave a statement for the same reason, fear of government retribution.

6

Lorona's strong confidence and promises of millions, on March 23, 2010, Otchkov and Diana Kitchukova retained Lorona with $5,000.00 in advance for representation in legal action against DLLC, and City of Phoenix. Subsequently, Stoikova by herself visited Lorona to sign the agreement. In the course of the meeting, Stoykova expressed some concerns in regard to additional fees that might occurred in case of failure to recover damages. In reply, Lorona reassured her that it is impossible: "*I understand your concern, but that is not going to happen.*" Under the contract Otchkov was obliged to pay all costs incurred during the process including the $350.00 filing fee and 33% contingency fee. Lorona requested a list of all financial losses and pertinent documents necessary for the forthcoming lawsuit. In July, 2010, Lorona asked Otchkov for help with sorting out all documents previously delivered to him for evaluation.

Surprisingly, on June 28, 2010, Otchkov received an offer letter from Everett to purchase the license previously denied with an additional 90 days to pay the reminder ( *Id.*, Exh. J). Confused, Otchkov showed Everett's offer to Lorona. In response Lorona strongly advised Otchkov not to accept that offer for the reason that may result in an additional deprivation of property; even Lorona was so excited because through that offer the DLLC acknowledged to a wrong as useful evidence in future § 1983 action.

But, all over the sudden, on September 22, 2010, Lorona changed the course of the projected victory through memorandum in determining that there is some issues that could prevent an action under § 1983. Although, his determination, on September, 23, 2010, Lorona sent a notice to Everett demanding refund of the deposit. (*Id.* Exh. K). Neither Everett nor other DLLC's representative responded to the notice. After that Lorona disappeared along with his promises. Following many phone calls and e-mails exchanges with the Firm's Associate Katherine Flaherty (Flaherty), finally on November

7

2, 2010, Otchkov and Stoikova were able to meet Lorona. During the meeting Lorona was confronted with the question why after [eight months] of empty promises and cheap excuses, the Firm determined that there is no case. In response, Lorona clarify that, the statute of limitation had run out and nothing further can be done. Frustrated, Otchkov and Stoikova demanded more answers and met with Flaherty. Seeking way out, Flahery explained that only Otchkov has a claim and should be filed soon as possible for statute of limitations concerns. On December 3, 2010, without Otchkov's knowledge or approval, Lorona filed a complaint named "Violation of Civil Rights" pursuant to nothing with no jury trial request and no docket number (*Id.*, Exh. L). Even, Lorona paid himself the $350.00 filing fee. Neither, the Firm nor Lorona provided Otchkov with a copy of the complaint. On January 3, 2011, Lorona informed Otchkov that the Firm no longer represent him based on its determination that there is no legal claim and directed him to serve the defendants before the deadline on April 2, 2011, or in the alternative to locate another attorney for further representation (*Id.*, Exh. K). On September 21, 2011, Lorona moved to withdraw as a counsel of record on ground irreconcilable differences with Otchkov. The court granted the motion on November 11, 2011. Feeling defrauded by the Firm and Lorona, Otchkov demanded refund of the $5,000 retainer that he paid for lawyers' corruption. Lorona refused to return the money. As result, Otchkov filed a complaint to the Arizona Bar Association. Supporting and encouraging further unethical Lorona alike conducts, Staff Bar Counsel-Attorney Ariel Worth found an investigation is not warranted and closed the case.

Affected by significant loss of money caused by duly sworn government officials, Otchkov wrote a letter to Everett with intent to reach a mutual agreement in resolving the dispute over the deposit beneficial for both parties. Everett never responded.

8

Instead, on September 27, 2011, Senior Risk Management Adjuster Trudy Hughes from Arizona Department of Administration rejected Otchkov's request  based on allegations of false and misleading information provided on his license application (*Id.*, Exh. M).

### C.    Procedural History

Armed with concrete evidence of fraud and corruption, on September 26, 2012, Otchkov commenced this Action against the DLLC, City of Phoenix and Jess Lorona in five Counts: Count I: Conspiracy for Deprivation of Constitutional Rights; Count II: Fraudulent Misrepresentation; Count III: Unlawful Deprivation of Property; Count IV: Ethnic Profiling; Count V: Intentional Deprivation of Emotional Distress. (*Id.*, ¶¶ 55-75). The District Court designated the case as a standard track and ordered Otchkov after completion of service upon Defendants to notified the Court in writing when the parties are prepared for a Preliminary Pretrial Conference in accordance with Rule 16(b) Fed. R.Civ.P. (E.R. 2). Also, the District Court ordered Otchkov to serve Defendants with a copy of the Order. (*Id*, at 3). Through a certified server, Otchkov served Defendants as ordered in accordance with Rule 4, Fed.R. Civ. P.. Kay Hughes from DLLC's office accepted the service on Everett's behalf on November 2, 2012. (E.R. 3). The same day City Defendants were served. Lorona was served on November 5, 2012. None of the Defendants' attorneys submitted a motion of appearance. Everett did not respond to the Complaint for over 21 days period prescribed by Fed R. Civ. P. 12(a). On December 5, 2012, Otchkov filed an Application for Entry of Default against Everett. On December 7, 2012, the Clerk granted pursuant to Fed. R. Civ. P. 55(a). (E.R. 4). On December 10, 2012, Otchkov moved for default judgment against Everett. (E.R. 5). City Defendants appeared by filing Motion to Dismiss pursuant  Fed.R.Civ.P. 12(b)(6). (E.R. 6 ). On ground noncompliance with the court's order, Otchkov filed Motion to Strike City

9

Defendants' Motion to Dismiss with request for 30 days time to respond after the District Court ruling on Everett's default issue. (E.R. 7). City Defendants opposed the motion (E.R. 8). Otchkov replied (E.R. 9). City Defendants replied on their [own] Motion to Dismiss without Otchkov's response (not attached, raises the same argument). Lorona appeared through a Motion to Dismiss pursuant Fed.R.Civ.P 12(b)(6). (E.R. 10). Otchkov moved to strike for noncompliance with the court's order (E.R. 11). Lorona opposed the motion (E.R. 12). Otchkov replied. (E.R. 13). On December 11, 2102, Everett filed a Motion to Set Aside Default (E.R. II14). Otchkov opposed it. (E.R. II 15). Everett replied (E.R. 16). While Otchkov's Motion for Default Judgment against Everett was pending, on January 7, 2012, Otchkov reserved Everett in person. On February 7, 2012, Everett filed a Motion to Dismiss (E.R. II 17). Otchkov opposed the motion (E.R. 18). Everett did not reply. On September 5, 2013, the District Court granted Everett absolute and qualified immunity with no leave to amend (E.R. II 19). To the City Defendants, the District Court granted their MTD on statute of limitations ground with no leave to amend (E.R. II 20). The District Court granted Lorona's MTD for failure to state claim with leave to amend restricted by *LRCiv.15.1* (The proposed amended pleading is not to incorporate by reference any part of the preceding pleading, including exhibits) (E.R. II 21). In order to preserve the original operative pleading including affidavits and exhibits incorporated therein, Otchkov elected not to amend. On October 3, 2013, Otchkov filed a timely Notice of Appeal. (E.R. II 22).

## ARGUMENT

### A.    The District Court Prejudiced Otchkov by Applying Incorrect Legal Standard When It Set Aside the Entry of Default Against Everett

10

When a defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R.Civ.P. 55(a). The Court may set aside an entry of default for "good cause." Fed.R.Civ.P. 55(c). To determine whether good cause exists, the court must consider the following three factors: (1) whether the party seeking default engaged in culpable conduct that led to the default; (2) whether the party seeking default has no meritorious defense; or (3) whether reopening the default would prejudice the other party. This is the same standard used for determining whether a default judgment should be set aside under Rule 60(b). *Id.* The good cause test is disjunctive, "such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* In considering these good cause factors, this Court instructs that the court is to be guided by the underlying policy objective that "'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id.* (quoting *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984).

Everett's answer to the complaint was due on or before November 23, 2012. He refused to answer or otherwise appear in the action within 21 days prescribed by Fed.R. Civ.P.12(a). On December 5, 2012, Otchkov requested an entry of default against Everett which the Clerk granted on December 7, 2012.(E.R. 4). On December 10, 2012, Otchkov filed Motion for Default Judgment (E.R. 5). Next day, December 11, 2012, Everett filed a Motion to Set Aside Default pursuant Rule 55(c) (E.R. 11). In his Motion to Set Aside Default, Everett makes three arguments. First he insists that he was not properly served in person under the terms of Fed.R.Civ.P. 4. and, he denies the district court ever had personal jurisdiction over him to enter default; second, he is not culpable, and third, he has meritorious defense.

11

### (i) Everett Was Properly Served Under Ariz.R.Civ.P 4.1(i)

On November 2, 2012, a certified process server went to the DLLC's office at 800 W. Washington, 5th Floor in Phoenix. The server left the summons and complaint with Kay Hughes who was authorized to accept it on Everett's behalf. (E.R. 3). Ariz.R. Civ.P 4.1(i) provides: "

(i) Service of Summons Upon a County, Municipal Corporation or Other Governmental Subdivision.

Service upon a county or a municipal corporation or other governmental subdivision of the state subject to suit, and from which a waiver has not been obtained and filed, shall be effected by delivering a copy of the summons and of the pleading to the chief executive officer, the secretary, clerk, or recording officer thereof.receive service of process."

According pursuant to Ariz.R.Civ.P 4.1(i) Everett was served sufficiently.

### (ii)    Everett Is Culpable for His Conduct

Everett contends that his conduct was not culpable because he did not act in bad faith based on ineffective service. In support the District Court applied *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001). But, that holding disfavor Everett because he had a constructive notice of this Action through his statutory Agent Kay Hughes and [intentionally failed to answer]. "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Group,* 244 F.3d at 697, (quoting *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). In this context the term "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decision

making, or otherwise manipulate the legal process. Here, in refusing to answer, Everett acted intentionally to take advantage of Otchkov for the following factors: 1) Otchkov's inferior social status, specifically as an immigrant; 2) expectation of legal incompetence by *pro se* litigant; 3) lawyers' corruption; 4) district courts' general prejudice against *pro se* litigants in litigation against the government. This Circuit has "never applied [this standard] to deny relief in the context of such motions except when the moving party is a legally sophisticated entity or individual." *Mesle v. Signed Pers. Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1092 (9th Cir. 2010). *See* also *Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925 (9th Cir.2004) So, as DLLC's Director, Everett is a "sophisticated individual" with powerful political and law enforcement connections, he is protected by sovereign or qualified immunity, he is insured, he has an adequate legal representation and such approach of ineffective service defense does not comport with his position. On the other hand, a possibility is very likely that, Everett refused to answer on his counsel's advice in waiting for Otchkov's next step because Everett's counsel filed motion to set aside default the very next day December 11, 2012, after Otchkov moved for default judgment on December 10, 2012. Hence, Everett was aware of the dangers of ignoring service of process as consequences of his actions, the the standard of *Franchise Holding II* applies. Everett failed to offer a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not 'intentional' under this Court's default cases. Accordingly, Everett's conscious decision [not] to answer the complaint was an intentional with unnecessary complications that clearly makes his conduct culpable.

   **(iii)    Everett Failed to Present a Meritorious Defense**

13

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Group*, 244 F.3d at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense . . . ." *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700). Asserting meritorious defense, Everett contends that, Otchkov failed to state any claims against him upon relief can be granted because he is entitled to qualified immunity. Evidently, Everett's assertion does no constitute defense on the fact that he is neither entitled to absolute nor for qualified immunity because Otchkov's claims are based on Fourteenth Amendment which protects individuals against the deprivation of liberty or property by the government without due process and that the Fourteenth Amendment gave Congress the power to abrogate the sovereign immunity of the States under § 5, as analyzed below. Therefore, the factors in the "good cause" analysis under Rule 55(c) does not apply to Everett. His conduct leading to the default was culpable, he alleged no facts sufficient to establish a meritorious defense and the District Court prejudiced Otchkov by setting aside the entry of default.

## B.  The District Court Erred in Granting Everett's Motion to Dismiss

"Title 42 U. S. C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ." *Lugar v. Edmondson Oil Co.*, 457 US 922 (1982). A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S.

14

299, 326 (1941). As a Former Board's member and current DLLC's Director Everett acted and acting under the color of state law.

As a second line of defense, Everett argues that as Director of DLLC he cannot be held liable for actions undertaken in his official capacity under § 1983. Everett also asserted the doctrine of qualified immunity and encouraged the District Court to act immediately in order to avoid unnecessary litigation expenses (E.R. II 17 at 7). Everett's argument contains no specific facts in support of his sovereign immunity defense claim to survive a § 1983 liability. Moreover, Everett's Motion to Set Aside Default is almost completely devoid of facts and law regarding his immunity defense and contained no facts, which proven at trial would constitute complete defense.

### 1. Legal Standard for Motion to Dismiss

A dismissal under Rule 12(b)(6) for failure to state a claim is reviewed *de novo*. *Milstein v. Cooley,* 257 F.3d 1004, 1007 (9th Cir.2001). The factual allegations in the complaint are assumed to be true. This Court review a decision by a district court to afford a public official or a municipality absolute or qualified immunity *de novo*. *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 642 (9th Cir.1999). Ordinarily, a *pro se* complaint will be liberally construed and will be dismissed only if it appears " beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106, (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957).

### 2. Due Process Violation

The Fourteenth Amendment prohibits the deprivation of liberty or property without due process of law. A due process claim is cognizable only if there is a

15

recognized liberty or property interest at stake. *Board of Regents v. Roth*, 408 U.S. 564, 69 (1972). *Carey v. Piphus* 435 U.S. 247 (1978). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property'." The due process clause protects a liberty or property interest in pursuing the "common occupations or professions of life." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39 (1957); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir.1985).

Twisting the facts, the District Court concluded that Otchkov has not identified nor the it found a single case that is similar to the instant case that DLLC's denial to refund Otchkov's "nonrefundable" deposit was a *constitutional violation* (E.R. II 19, at 11). In contrast, in this case the DLLC's denial of deposit[4] refund resulted in unjustifiable forfeiture of property by a state agency based on its own failure to transact, which as a matter of fact and law it is undeniable constitutional violation for every reasonable person to conclude. In his opposition to Everett's MTD, with regard to due process violation, Otchkov relied on relevant decisions in *Sinaloa Lake Owners Association v. City of Simi Valley*, 864 F.2d 1475, 1483 (9th Cir. 1989). *Parratt v. Taylor*, 451 U.S. 527 (1981), *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004). (E.R. II 18, at 10-13). In that respect, the record shows otherwise on the fact that, neither Everett identified a single state or federal authority identical or similar in support of his argument nor the District Court in Everett's defense supported its decision with identical or similar authorities.

Next, Otchkov challenges the DLLC's imposition of criminal sanction for the alleged crimes of falsifying and providing false information in his license application. On

---

[4] Definition for Deposit: A sum payable as a first instalment on the purchase of something or as a pledge for a contract, the ballance being payable later.

16

September 27, 2011, the DLLC made its final decision not to refund the deposit. Trudy Hughes (Hughes) from the Arizona Department of Administration Risk Management Division concluded that Otchkov failed to met the standard criteria pursuant to A.R.S. § 4-210 A 2), and providing a "false and misleading information" in his application upon which the DLLC would not refund the deposit and forfeited it. (E.R. 1, Exh. N). First, that senseless allegations must be disregarded as insane, because, [i]f Otchkov intended to do so, he would [not] risk $55,834. Second, it is unclear for which reason the DLLC forfeited the deposit. According to Hughes, the nonrefundable deposit was a part of *application process*. (*Id*). According to Everett's pleadings, the nonrefunadble deposit was for the purposes of securing purchasing of License#6. Also, Hughes' order of forfeiture has a dual purpose: the former serves as an imposition of criminal punishment for the alleged criminal acts of providing a incorrect information or falsifying application, the latter charging Otchkov with $55,834 for application process (*Id.*). Supposedly, Otchkov broke the law by providing false information in his license application . . . it is a criminal matter . . . it is not under the DLLC's jurisdiction on the fact that, neither the DLLC is authorized to criminally prosecute applicants nor Hughes has the judicial power to take the bench and administer criminal justice. On the other hand, if the DLLC is authorized by the State of Arizona to prosecute and imposed a criminal sanctions upon individuals that would result in prosecution by kangaroo court with no rules of criminal law that could lead to anarchy. Thus, under these circumstances the DLLC acted with no authorization by the law in imposing a criminal punishment of $55,834 against Otchkov for the committing the crimes of falsifying license application and providing false information clearly violates his due process right and such an abuse of power is regarded as *oppressive and utterly intolerable in a civilized community.*

17

Next, Otchkov asserts a claim of due process right violation by the District Court. Acting in Everett's defense the District Court noted that Otchkov merely claims he did not understand what "nonrefundable" deposit meant. (*Id.* at 14, lines 2-3). As far as Otchkov knows, he has no claim of not understanding what "nonrefunadble deposit" means nor such issue was plead by the parties in any responsive pleadings. Despite that inconsistency with the record, something similar occurred on the day before Otchkov paid the "nonrefundable deposit." The needless DLLC's instruction regarding "nonrefundable deposit" caused Otchkov some confusion because a deposit is always [nonrefundable] in case of purchaser's [failure] to complete the transaction as business rule known to every reasonable person in this World. In order to clarify that confusion, before submitting the deposit, Otchkov asked the DLLC's female employee in charge how "nonrefundable deposit" works in that process . . . not what it means. In response, she assured him that, if his has a "clean criminal record" there is nothing to worry about it . . . that was all. Relying on previously approved application by the DLLC to enter the Lottery upon clean criminal record, Otchkov paid the sum of $55,834 to secure a [purchase] of License#6 . . . not to apply for it. However, in the absence of an argument over interpretation of "nonrefunadble deposit" meaning by the parties, clearly indicates secret contacts between Everett's counsel and the District Court in gathering evidence in governments favor without providing Otchkov with the opportunity to explained his side of that particular story. Thus, under these circumstances fraud upon the court is apparent on premeditated judgment. In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court  stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or

18

influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." If so, in this matter, the District Court did not act in the scope of its duty in performing an investigating function in Everett's favor without providing notice of its intent to Otchkov that violates his due process right. Such an improper judicial process extremely prejudiced Otchkov in way offensive to the Constitution that mandates reversal as the justice requires so . . . *as this case stands before this Court for impartial judgment*.

### (iii)    There Was a Conspiracy for Deprivation of Constitutional Rights

Although the District Court found resolution of the immunity to be dispositive in this case and declined to addressed other arguments, in order to prevent waiver Otchkov is raising the claim of conspiracy to Count One, because is heavily related to Counts Three, Four, and Five to the Complaint. *Balser v. Department of Justice*, 327 F. 3d 903, 911 (9th Cir. 2003). "Issues not raised in the opening brief are deemed waived."

It is "well settled * * * that no civil action lies for a conspiracy unless there be an overt act that results in damage to the plaintiff." *Nalle v. Oyster*, 230 U.S. 165, 182, (1913). In his MTD, Everett argues that conspiracy is not itself constitutional tort under §1983 citing *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 739 (9th Cir. 1987). Everett also denies any involvement in conspiracy and avers that the Complaint does not alleged agreements with any other Defendants to accomplish unlawful acts relying on *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (E.R. II 17, at 5). Everett's reliance on these two authorities is misconstrued for two reasons: the former considers a taking clause issue which is not at stake here, and Terry Cassettari is not protected class; the latter is plaintiff's case that favors Otchkov in all respects including abuse of power by government officials for retaliation purposes.

19

In *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities under the laws" to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." It is indisputable fact that, Otchkov is a member of protected class ethnic minority of Bulgarian origin. He sufficiently satisfies the required element of §1985 conspiracy claim: that the defendants were "motivated by a 'class-based, invidiously discriminatory animus.'

Cortez's desire for retaliation was born after his failure to stop the patio project. Then, as a City of Phoenix's employee through his connection as a police officer, he convinced the City Council to recommend disapproval of Otchkov to own License#6. On December 4, 2008, Everett substituted the Chairperson Cindy Valdez, exactly on that day in order to execute the conspiracy based on Cortez's retaliatory motive. After that, Lorona took the driver's seat in aiding and abetting the opposing parties to prevent recovery until his withdrawal in December 2011. So, under § 1985(2), the conspiracy was for the purpose for depriving Otchkov of property and privileges, and under § 1985(3) acts done in furtherance of the conspiracy Otchkov was injured in his person and property and deprived of having and exercising a right or privilege as a citizen of the United States. Otchkov's harm was undisputed, it was "*atrocious and utterly intolerable in a civilized community*" in contrast to the District Court's holding. Even more, in *Haddle v. Garrison* 119 U S 489 (1998) the Court held ". . . 42 U.S.C. § 1985(2) provides that if conspirators "do ... any act in furtherance of ... such conspiracy, whereby another is injured in his person or property, . . . the party so injured . . . may"

20

recover damages, § 1985(3). In that contest Otchkov' absolutely satisfies the *Griffin's* requirement on the fact that Everett and Cortez were politically motivated based on personal animus against Otchkov's Bulgarian ethnicity. In fact, Everett cannot escape the truth that he acted upon Cortez's orders, because Cortez openly unfold the purpose of the conspiracy in three occasions: 1) when upon threats consistent with Otchkov's Bulgarian ethnicity, he guaranteed that Otchkov would [not get] license in City of Phoenix; 2) on December 4, 2008, couple of hours before the hearing, Cortez impatiently closed the restaurant knowingly that, Otchkov's application is [already] denied, and 3) when Cortez bragged about his victory by crossing the line in arresting a mother with her eight-year old child and interrogated that eight-year old child without parental consent or court order. Therefore, as result of the conspiracy Otchkov was injured in his person or property and he is entitled for damages  against all the Defendants.

### (iv) The Complaint is Not Time Barred

For the same reason above, Otchkov will raise that issue in order to prevent waiver, because the District Court granted City Defendants' MTD on ground statute of limitation which is related to Otchkov's conspiracy claim against all the Defendants.

The United States Supreme Court in *Wilson v. Garcia*, 471 U.S. 261 (1985), established that the statute of limitations for Section 1983 actions is the state statute of limitations for personal-injury actions. Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. The statute of limitation for personal injury in the State of  Arizona is two years. A.R.S. § 12-542. A statute of limitations under § 1983, however, begins to run when the cause of action accrues, which is when the plaintiffs

21

know or have reason to know of the injury that is the basis of their action. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir.1998). So, Otchkov's deprivation of privilege occurred on December 4, 2008, when the Board disqualified him of owning License#6. As result of, the deposit lost its purpose because nothing to be purchased following the DLLC's refusal to complete the transaction. Then, under its governmental power the DLLC confiscated the sum based on its own failure to act that converts to a deprivation of property with no due process in violation of the Fourteenth Amendment. In June 2009, Otchkov unsuccessfully tried to find a mutually acceptable solution with the Former Director Jerry Oliver. Then, in September 2010, Lorona attempted to negotiate resolution of the issue with the current Director Everett, who never responded. (E.R. 1 Exh. K). Resolution was not reached and during that time the property was with unknown fate until the September 27, 2011, the DLLC made its final decision not to refund the deposit and forfeited it. In *Norco Construction, Inc. v. King County*, 801 F.2d 1143, this Court concluded: "Even though the plaintiffs knew of the taking earlier, waiting for a final determination increased the possibility of finding a mutually acceptable solution." So, on December 4, 2008, Otchkov knew for the injury and since June 2009, he unsuccessfully attempted a mutual resolution until September 27, 2011, when the DLLC made its final determination not to refund the deposit. Accordingly, under the scope of *Norco Construction,* the statute of limitation started to run on September 27, 2011, upon accrual of the action and the Complaint was timely filed on September 26, 2012.

### (v) The District Court Erred in Granting Everett Sovereign Immunity

**"Public agents must be liable to the law, unless they are to be put above the law."**
**Old Colony Trust Co. v. City of Seattle, 271 U.S. 426 (1926).**

22

The Eleventh Amendment bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and such a federal court action brought by a citizen against a state official acting in his official capacity. *Edelman v. Jordan,* 415 U.S. 651 (1974); *Quern v. Jordan*, 440 U.S. 332, 337, (1979). In *Martinez v. California*, 444 U.S. 277 (1980), the Supreme Court explained:

> Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an ***illusory promise;*** and the supremacy clause of the Constitution insures that the proper construction may be enforced.(emphases added)

Otchkov's claims of unconstitutional deprivation of privilege and property are based on the Fourteenth Amendment and Title VII of the Civil Act of 1964. The Fourteenth Amendment of the Constitution provides in part:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The due process clause protects a liberty or property interest in pursuing the "common occupations or professions of life." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39 (1957); *Chalmers v. City of Los Angeles,* 762 F.2d 753, 757 (9th Cir.1985). In *Scheuer v. Rhodes*, 416 U.S. 232 (1974) the Court noted: "The Eleventh Amendment does not in some circumstances bar an action for damages against a state official charged with depriving a person of a federal right under color of state law . . ."" This Circuit, in *Hackin v. Lockwood*, 361 F.2d 499, emphasized: "But we are not convinced any such immunity exists if one of three divisions of the State are sued under 28 U.S.C.

§ 1343, and more particularly subsection (3) alleging a deprivation of a constitutional right. If the Eleventh Amendment were an absolute bar, there would be no jurisdiction in the federal district courts to hear any of the reapportionment cases." 28 U.S.C. § 1343 reads:

> (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> > (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
> >
> > (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent.

So, under the first prong, to Count One, Otchkov sued Everett for conspiracy with Cortez for unconstitutional property deprivation, and for continuing of conspiracy with Lorona to prevent recovery for the damages that Otchkov suffered as result of the over acts of the same conspiracy. Under the second prong Everett aided in preventing the wrong and had the knowledge and power to prevent that unconstitutional deprivation of property and privilege.

Title VII of the Civil Rights Act prohibits employment discrimination based on race, color, religion, sex and national origin. Certainly, Otchkov was not an employee, he was employer who provided full-time job for over twenty Americans and businessman who paid income and license's taxes from which a part went to Cortez's Everett's pockets. In *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), the Supreme Court noted: "*Edelman v. Jordan*, 415 U.S. 651, (1974), did not prohibit damage suits against the states for violations of Title VII. The rationale for this conclusion was that since the

14th Amendment is itself a substantive limit on state authority, Congress may, under the enforcement power granted by § 5, provide for suits against the states to vindicate interests protected by the Amendment even when damages will be paid directly from the state treasury." On the basis of Cortez's retaliatory ambition against Otchkov's Bulgarian ancestry, Everett personally prevented Otchkov of running a business and makes living which clearly falls under Title VII and in violation of First Amendment's right to pursue a business of choice. With respect to Title VII claims, the Supreme Court has made clear that there is no heightened pleading requirement; rather, a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face. *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 508 (2002) "An employment discrimination complaint need not contain specific facts establishing a *prima facie* case under the *McDonnell Douglas* framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a) (2). Accordingly, the Complaint sufficiently satisfies short and plain statement under Rule 8(a)(2) and Otchkov is entitled to relief under 28 U.S.C. § 1343 and 42 U.S.C. § 1985 the Eleventh Amendment does not bar his claims against the State of Arizona.

**(vi)    The District Court Erred in Granting Everett Qualified Immunity**

The qualified immunity doctrine protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Hafer v. Melo*, 502 U.S. 21 (1991), the Supreme Court held: "State officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities." The Court also described the

25

difference between official capacity and personal capacity suits. "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." According to *Hafer's* holding, Everett is personally liable for the wrongful actions taken in his official capacity sued in his individual capacity for the injuries Otchkov suffered.

The Eleventh Amendment does not wholly bar plaintiffs from federal court, however, because the complaint can be amended to claim only damages from the defendants in their individual capacities. A state indemnification statute does not automatically extend immunity to state officials. *Demery v. Kupperman,* 735 F.2d 1139, 1147 (9th Cir.1984); *Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1350 (9th Cir. 1981) (the eleventh amendment "bar is not automatically applicable to a suit brought against a state official in his individual capacity alleging the commission by him of a common law tort in the course of his employment"); *Duckworth v. Franzen,* 780 F.2d 645, 651 (7th Cir.1985) ("it would be absurd if all a state had to do to put its employees beyond the reach of section 1983 ... was to promise to indemnify....").

The determination of qualified immunity necessitates three inquiries: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991). Without inquiring into the merits by contrast, an officer who has qualified immunity can be liable under § 1983, but only for actions taken in bad faith, and not for actions that are merely negligent. *Sellars v. Procunier* 641 F.2d 1295 (9th Cir. 1981). Clearly, Everett's actions do not fall under the latter because his conduct

26

was intentionally unlawful and predatory. Everett acted in bad faith when he substituted the Board's Chairperson Cindy Valdez [exactly] on December 4's hearing in order to execute the objective of the conspiracy. Everett cannot escape the truth that his actions were taken in bad faith according to Cortez's statement described above in Section-Conspiracy (Page 18). Under qualified immunity, an officer is protected from suit when he makes a reasonable mistake of law or fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Here, evidently from the facts Everett did not make an innocent mistake to be protected by qualified immunity. Therefore, in that contest Otchkov sufficiently satisfies all of the three inquiries: 1) as a citizen of the United States Otchkov enjoys a right to pursue a business of choice protected by the First Amendment and due process right guaranteed by the Fourteenth Amendment; 2) these two basic rights are well "clearly established" by the Constitution and protected by the courts; 3) as a reasonable officer Everett knew and had reason to know that his actions will violate these rights. Because the Eleventh Amendment does not bar § 1983 claims against state officers sued in their individual capacities, the District Court's judgment should be reversed.

### (vii) Everett is Not Immune from State Tort Claim

To Count Five: Intentional Infliction of Emotional Distress (IIED), the District Court implied Arizona substantive law. *Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."). Otchkov agree his claim of IIED is a state law tort claim, but *Mason* is distinguish in that, it does not concerns a federal claim. Otchkov's IIED claim advanced in the Complaint is sufficiently related to the federal claims so as to form a part of the same controversy within the contemplation of §1983.

27

The Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) held: "Pendent jurisdiction, in the sense of  judicial power, exists whenever there is a substantial federal claim and the relationship between it and the asserted state claims permits the conclusion that the entire action before the court comprises one "case.""

In *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 (1987), the Arizona Supreme Court stated the three elements a plaintiff must prove to establish this claim: (1) the conduct of the defendant must be "extreme" and "outrageous;" (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (3) severe emotional distress must indeed occur as a result of defendant's conduct. Here, Otchkov sufficiently satisfies all three elements on the fact that Everett acted in a premeditated way without legal justification calculated to cause an emotional distress that every reasonable person would agree. As direct result of the emotional distress inflicted by Everett, on December 8, 2008, Otchkov suffered a heart attack that left him permanently disabled with tremendous unrecoverable financial loss. Further, in defending Everett, the Court stated Otchkov failed to alleged facts sufficient to show that Everett knew or should have known that merely denying Otchkov's to return the nonrefundable deposit was so "extreme" in degree as to go beyond all possible bound of decency and would be regarded as atrocious and utterly intolerable in a civilized community (E.R. 19, at 13). Quite to the contrary, the Complaint sets facts that Everett conduct was "extreme" and "ourageous" regarded as *atrocious and utterly intolerable for civilized community,* and that is the reason why the Court did not permit the claims to proceed to discovery and trial, because . . . . "an average member of the community would . . . exclaim, "Outrageous!"" Restatement (Second) of Torts § 46 comment b (1965). Moreover, according to Cortez's

28

statements in public places, Everett cannot distance himself from the fact that, he intentionally violated Otchkov's constitutional rights for the purpose to inflict emotional distress . . . not just "merely" and nicely refused to refund the deposit. *Foster v. MCI Telecommunications Corp.*, F.2d 1116, 1120 (10th Cir.1985) "We have held that "damages may be awarded for non-pecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights." *Carey v. Piphus*, U.S. 247 (1978) ("mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983"); *Memphis Community Sch. Dist. v. Stachura*, U.S. 299, 308-09 (1986) (*Carey* stood for proposition that compensatory damages are available under §1983 for constitutional violations, regardless of whether the constitutional right violated is procedural or substantive). Therefore, in that argument Otchkov has utterly established all of these required elements of intentional torts and since the injury is in large part of the mental one, he is entitled to damages for mental suffering against Everett.

## C.     The District Court Abused its Discretion in Denying Otchkov's Motions to Strike City Defendants and Jess Lorona's Motion to Dismiss for Disobeying Court's Order

In Lorona's Order the Court noted, that Otchkov believes that the Motion to Dismiss deviates from Rule 16 Scheduling Order. (E.R. II at 5). Otchkov does not. On September 26, 2012, Otchkov commenced the action. On September 27, 2012, the Court designated the case as standard track and ordered Otchkov after service upon Defendants to notify the Court in writing when the parties are prepared for a Preliminary Pretrial Conference in accordance with Fed.R.Civ. P. 16(b).(E.R. 3 at 1-2). Also, the Court directed Otchkov to serve Defendants with copy of the Order which in a sense does not allowed responsive pleadings prior to Preliminary Pretrial Conference and

29

caused confusion because Rule 16(b) requires report under Rule 26(f) before the issuance of Rule 16 Scheduling Order. Without submitting notices of appearance City Defendants' and Lorona's counsels filed Motions to Dismiss. Otchkov moved to strike the motions pursuant Rule 12(f) on ground failure to participate in Preliminary Pretrial Conference before Rule16 Scheduling Conference. Otchkov also requested the District Court a 30 days allotment for filing responsive pleadings after its ruling over Everett's default issue (E.R. 7-10). In City Defendants' Order, the Court recognized that Otchkov is a *pro se* plaintiff and will construe his pleadings liberally (E.R. II 20, at 6). Good to be true, if so, the District Court should issue a Rule 7.2 (i) Cautionary Notice, or ruled independently on Otchkov's Motions for Strikes within 21 days required by Fed.Civ.P. Rule 12(f)(2). Accordingly, the District Court improperly denied Otchkov's Motions to Strike in conjunction with granting City Defendants' and Lorona's MTD that deprived Otchkov of the opportunity adequately to oppose their motions prejudiced Otchkov and reversal is required.

### D.  The District Court Erred in Granting the City Defendants' Motion to Dismiss on Ground Statute of Limitations

This Court reviews *de novo* the district court's dismissal of a complaint on statute of limitations grounds. *Donoghue v. Orange County*, 848 F.2d 926, 929 (9th Cir.1987). "[W]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993).

As an initial matter in their MTD, the City Defendants contend that the limitation period expired no latter on December 19, 2008. (E.R. 6, at 4). Basing its decision on

*Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001), *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002), *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and other relevant authorities the District Court granted the motion on statute of limitation ground and declined to address other issues raised [only] by City Defendants. According to City Defendants' argument the last discrete act alleged by Cortez was on December 19, 2008, and that day the statute of limitation started to run. Agreed, the Court stated, that the discrete acts do not escape the statute of limitations challenging simply because they are related to act allowed in timely filed charges citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. (E.R. II 20 at 9-10). Otchkov agree; he has no claims against Cortez after December 4, 2008, when [his] part of the conspiracy has ended. Cortez's last oppressive act was on January 19, 2009, when he arrested a mother with her eight-year old child and interrogated forcibly her eight-year old child without parental consent or court order. Further, the District Court in Cortez's defense cited *Rk Ventures*, where this Circuit applied *Morgan* to a §1983 claim based on discrete acts. Although, Otchkov has no claims against City Defendants after December 4, 2008, in respect to First Amendment issues *Rk Ventures* favors him. Next, the District Court concluded that, the continuing impacts from past violations of §1983 are not actionable citing *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) and *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir. 1979). These authorities are immaterial and inapplicable here on the fact that an employment discrimination, prison visits, and job promotions are not even close to the Cortez's oppressive actions and abuse of power.

Further, the District Court concluded that, Otchkov knew of his alleged injury no later than December 2008, and he filed a complaint with another judge in the same court (*Id.,* at 11). In regard to Otchkov's awareness of the injury as articulated earlier,

31

Otchkov knew for first time of the injury in June 2009, when Former Director Jerry Oliver refused to refund the deposit and suggested an assistance of lawyer. For that reason in March 2010, Otchkov retained Lorona, who instead pursuing recovery he acted to the contrary to prevent it including the fraudulently filed complaint on Otchkov's behalf.

### (i) Continuing Conspiracy

In *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) this Court concluded: " . . . [i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy'." Otchkov's conspiracy claim against all the Defendants derived from three overt acts: 1) on December 4, 2008, when the Board denied Otchkov's license solely on Cortez's account (the beginning of the damaging period); 2) Lorona's intend to prevent recovery within the limitation period, and 3) the DLLC's final decision on September 27, 2011.

In *Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1988), the Court emphasized: "It does not follow, however, that the statute of limitations excludes those same allegations from the determination of whether an agreement existed. To permit the statute of limitations to bar consideration of allegations from which a jury could infer an agreement would prevent recovery for damages suffered within the limitations period merely because the defendants formed their agreement too early. Indeed, crafty conspirators could agree to injure and then wait out the statutory limitations period before inflicting the injury to avoid civil liability for their conduct. This is wrong. If a plaintiff is injured within the applicable limitations period by an act committed in furtherance of a civil conspiracy entered into outside that period, he should be able to recover for that injury." In short, in the middle of 2007, Cortez failed to stop the patio project and upon his persistence the City Council recommended disapproval. On December 4, 2008, the

32

Board denied Otchkov's liquor license resulting in closing "Big Nixx." Seeking relief, Otchkov hired Lorona in March 2010, well *inside the limitation period*. As an experience attorney, Lorona knows very well how to manipulate the judicial system as he did here in order to advance statute of limitation defense in City Defendants' favor. In *Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 117, 127 (5th Cir. 1975), Cert. denied, 423 U.S. 1054, the Court recognized: "Where the violation is final at its impact, for example, where the plaintiff's business is immediately and permanently destroyed, or where an actionable wrong is by its nature permanent at initiation without further acts, then the acts causing damage are unrepeated, and suit must be brought within the limitations period and upon the initial act." That rule does not apply here, because to the former, on December 4, 2008, the Board disqualification of Otchkov to own a liquor license permanently destroyed "Big Nixx," but the violation was not final in its impact in respect to property deprivation claim which is Complaint's principal count. To the latter, the actual wrong of unconstitutional property deprivation was [not] final and permanent at the initial impact on December 4, 2008, in two reasons: Lorona's subsequent acts in aiding and abetting the opposing parties were done within the statute of limitations period, and Everett's offer in June of 2010, to issue the license upon payment of the ballance [overruled] the Board's decision on December 4, 2008, whatsoever. In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 377 F.2d 776 (3d Cir.1967) (supplemental opinion at 793-795), the following rule was applied:

> [W]here the repeated and measurable invasion of a plaintiff's rights occurs both outside the statutory period and also within it, the fact that some of the injury and damage occurred outside the statutory period does not affect the plaintiff's right to recover for the separate invasion of its rights which occurred within the period.The rule as applied in that case was approved by the Supreme Court on appeal of the *Hanover* case. *See* 392 U.S. 481 (1968).

In *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983), the Court reviewed several state cases and held that these cases established the following rules for liability for civil damages from an unlawful conspiracy:

> "As to the extent of liability, once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action, ... so long as the purpose of the tortious action was to advance the overall object of the conspiracy." 705 F.2d at 481.

Because, Cortez is the proximate cause of Otchkov's injuries and all the Defendants acted in concert, the overt acts on December 4, 2008 and September 27, 2011, shear the same injury, the statute of limitation commenced upon the latter when the DLLC made its final decision to forfeit the deposit.

### (ii)  City of Phoenix is Liable for Cortez's Oppressive Actions

In *Monell v. New York City Dept. of Social Services,*  436 U.S. 658 (1978), the Supreme Court held: "Local governing bodies (and local officials sued in their official capacities) can, therefore, be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, local governments, like every other § 1983 "person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decisionmaking channels."

Otchkov agreed with the District Court holding that he failed to present City of Phoenix's policy, and he has not explained how such a policy amounts to deliberate indifference (E.R. 35 at 13). First, Cortez's actions cannot be considered as "deliberate indifference . . . they surpassed by far that definition;" second, Cortez's oppressive "communist alike actions" (even worst) were calculated to inflict harm; third, lucky Phoenicians, hopefully, there is no such a City of Phoenix's policy that authorizes its police officers to make false statements, ethnically or racially profiling minorities, threatening and intimidating, arresting and interrogating minors without parental consent or court order, destroying businesses for personal retaliation reasons.

There is no heightened pleading standard with respect to the "policy or custom" requirement of demonstrating municipal liability. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-68 (1993); *Empress LLC v. City of San Francisco*, 419 F.3d 1052, 1055 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1124 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 679-80 (9th Cir. 2001). In *City of Canton v. Harris*, 489 U.S. 378, (1989), the Court held: "A municipality may, in certain circumstances, be held liable under §1983 for constitutional violations resulting from its failure to train its employees." Further, the Court noted that a municipality's failure to train its employees is one such claim of omission or inaction by the municipality. *Id.*, 489 U.S. at 392, 109 S.Ct. 1197. Otchkov sufficiently demonstrates that the deprivation of privilege was a product of a City of Phoenix's inaction, failure to adequately supervise, train, review, and discipline its police officers. In consequence of Cortez's fearless action, such police misconduct has taken place here with disrespect to state and federal law that resulted in violation of Otchkov's constitutional rights. "A municipality has no immunity from liability under §1983 flowing

from its constitutional violations, and may not assert the good faith of its officers as a defense to such liability." *Owen v. City of Independence*, 445 U.S. 622 (1980). *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it means for establishing vicarious liability for the underlying tort"). In this Circuit, a claim of municipal liability under §1983 is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986). Therefore, under these circumstances, the City of Phoenix is liable for the injury Otchkov sustained caused by Cortez as a joint venturer and coconspirator as it is liable for his defense.

## E. The District Court Erred in Granting Lorona's Motion to Dismiss

Lorona's MTD follows defense of Otchkov fails to state claim; Otchkov failed to allege a conspiracy; Lorona did not act under the color of the state law; Lorona's acts are not extreme and outrageous, and Otchkov is not entitled to leniency as *pro se* litigant. (E.R. 10). To prove a conspiracy between the state and private parties under [§] 1983, the [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc). *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) "Private persons, jointly engaged with state officials in the challenged action, are acting under color' of law for purposes of Section  1983 actions." *Lugar v. Edmondson Oil Co.*, 457

36

US 922 (1982); *Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996) (E.R. 1 ¶¶ 40-49). Although, Lorona is a private party he corruptly conspired in conjuction with Maricopa County and State of Arizona officials, he acted under color of state law required by §§ 1983 and 1985.

Applying *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916 (9th Cir. 2004), the District Court stated that Otchkov merely alleges "[a]t all times relevant herein, the defendants were state actors and their conduct was subject to § 1983. (E.R. II 35 at 7). In *Olsen* this Circuit found the plaintiff's complaint is devoid of any discussion of an agreement amongst appellee to violate her constitutional rights. It is not the case here, because there no is summary judgment appeal and revocation of bond is not violation of constitutional right and Lorona does not enjoy absolute or qualified immunity in any event as the government officials do.

Denying liability Lorona contends that Otchkov's lawsuit is meritless and serves only the purpose of harassing the Defendant[s], and the Complaint is legally deficient and such must be dismissed (E.R. II 10 at 3). First, seeking justice and recovery from unreasonable intrusion of constitutional rights by the government it is not [harassment], and in reality cannot be; second, to the latter most likely, Lorona considers his "legally sufficient" complaint with "legally [in]sufficient claims" that he filed on Otchkov's behalf. (E.R. 1, Exh. L). In respect to Lorona's to *pro se* litigants issue, Otchkov agree, his legal pleading standard is far below than those drafted by attorneys. *Haines v. Kerner*, 404 U. S. 519 (1972). But, on the other hand, if the justice requires eloquence and proceeding that meet the legal standard, then the result would be a *pro se* litigant with a right to represent himself with no right to recover on viable claims in the absence of competent lawyer. "The rights of *pro se* litigants require careful protection where highly technical

requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits." *Garaux v. Pulley*, 739 F.2d 437, 439-40 (9th Cir.1984). Further, defending the wrong, the District Court held Otchkov responsible for failure to served defendants while Lorona was an attorney of record who initiated the action. Otchkov conducted an extensive research and found no state or federal rules of civil procedures nor supportive state or federal authorities that require a [represented] litigant to serve  defendant(s). Lastly, supporting unethical conducts, the District Court concluded Otchkov failed to make factual allegations that Lorona intended to cause him emotional distress or recklessly disregarded the results of his actions and found Otchkov failed to state claim for intentional infliction of emotional distress. (E.R. II 35 at 9-10). The question is: "What a lawyer could have done more to his client than: taking a clients' money upon false promises of millions; then breaching his duty by assisting the adversary, and then, again upon lies and cheap excuses prolonging the time for filing a lawsuit in adversary's favor in order to prevent recovery. If that is not . . . "infliction of emotional distress . . . then what it is? Lorona's part with other Defendants to inflict harm is undisputed; he acted intentionally by aiding and abetting the opposing party aware of his illegal activities in providing assistance to the opposing party for the purposes to assist the principal violation. With all due respect, regardless of any court interpretations, Lorona's conduct was "extreme" and "outrageous" for every reasonable person to conclude.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint "need not provide detailed factual allegations" but rather must simply allege facts sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007). Fed.R.Civ.P. 8(a) requires only "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47 (1957). It is clear from the Complaint's face that Lorona has a fair notice of Otchkov's claims in addition to Lorona's personal knowledge of his illegal activities. Therefore, based on Lorona's unethical conducts, it is not difficult for a reasonable jurist to find out his intent and role in the situation here.

## CONCLUSION

Since the Complaint has met its burden as required by Rule 8 Fed. R. Civ. P. and the *Twombly* standard, Otchkov deserves his ultimate day in federal court. All the Defendants have failed to meet their burden under the standing principles held in the conclusions cited in this Appeal, and are not entitled to relief under Rule 12(b)(6). The District Court's finding that Otchkov can prove sets of facts beyond reasonable doubt failed to apply correct standard that resulted in prejudice in a way adversarial to administration of justice. Based on the facts and the authorities above, the District Court's judgments should be reversed and remanded.

Dated: February 10, 2014.

Respectfully Submitted,

By:
Nikolay Otchkov *Pro Se*
Plaintiff-Appellant

## PLAINTIFF-APPELLANT'S VERIFICATION

The undersigned under the penalty of perjury pursuant to 28 U.S.C. §1746, deposes and says that, I am the Plaintiff, and the facts stated therein are true and correct.

Executed on February 11, 2014.

Nikolay Otchkov

## CERTIFICATE OF COMPLIANCE

The undersigned, hereby certify that the forgoing brief complies with Rule 28

Federal Rules of Appellate Procedures and Ninth Circuit Rule 28-2 and contains 40

double-spaced pages.

Dated: February 11, 2014.

Nikolay Otchkov/*Pro Se*
Plaintiff-Appellant

## CERTIFICATE OF SERVICE

The the undersigned, hereby, certify that the Original and seven copies of the Opening Brief and four copies of Excerpts of Record were sent via certified mail this 11th day of February 2014 to:

Office of the Clerk
James R. Browning Courthouse,
U.S. Court of Appeals
P.O. Box 193939
San Francisco, CA 94119-3939

Two copies of the Opening Brief and one copy of Excerpts of Record were sent via certified mail on this 11th day of February 2014, to:

Robert A. Hyde
Assistant City Attorney
200 West Washington, Suite 1300
Phoenix, AZ 85003
Attorney for Defendants City of Phoenix
and Detective Oscar Cortez

Two copies of the Opening Brief and one copy of Excerpts of Record were sent via certified mail on this 11th day of February 2014, to:

James B. Bowen
Assistance Attorney General
1275 West Washington
Phoenix AZ 85007
Attorney for Defendant Alan Everett

Two copies of the Opening Brief and one copy of Excerpts of Record were sent via certified mail on this 11th day of February 2014, to:

Frank R. Mead
2111East Highland Avenue, Suite 431
Phoenix AZ 85016
Attorney for Defendant Jess Lorona

Nikolay Otchkov/Pro se